IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CARTER M. STOVER and
BRENDA L. STOVER,

                Plaintiffs,

v.                              CIVIL ACTION NO. 5:09-cv-00152

FINGERHUT DIRECT MARKETING, INC.
and CIT BANK,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Fingerhut Direct Marketing, Inc. and CIT Bank's Motion to Dismiss Count I of the Complaint [Docket 7]. For the reasons set forth below, this motion is **DENIED**. Also pending is Defendants' Motion to Accept Filing of Reply Brief [Docket 13]. This unopposed motion is **GRANTED**.

*I. BACKGROUND*

This action arises from the allegedly unlawful efforts of Defendants Fingerhut Direct Marketing, Inc. (Fingerhut) and CIT Bank (CIT) to collect consumer debts from Plaintiffs Carter and Brenda Stover.[1] Fingerhut is a direct retail marketing business that sells consumer goods. CIT is engaged in a business relationship with Fingerhut whereby CIT issues consumer credit to customers

---

[1] The recitation of the factual background of this action is drawn from the allegations in the complaint. As this matter is before the Court on a motion to dismiss, the allegations are assumed to be true for present purposes. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 55 (2007).

purchasing goods from Fingerhut. Plaintiffs, both residents of Raleigh County, West Virginia, purchased consumer goods from Fingerhut with the aid of financing from CIT. Plaintiffs eventually fell into arrears on their indebtedness to Defendants, at which time Defendants began efforts to collect the outstanding debts by placing telephone calls and sending mail to Plaintiffs.

On an unspecified date in August of 2008, Plaintiffs retained counsel to represent them with respect to the debts owed to Defendants. Shortly thereafter, a representative of Defendants placed a telephone call to Plaintiffs' residence. During that call, Plaintiffs advised the representative that they had hired an attorney and provided the representative with their attorney's name and telephone number. Despite being aware that Plaintiffs were represented by an attorney, Defendants placed eighty-nine telephone calls to Plaintiffs' residence between October 3, 2008, and January 21, 2009.

On January 22, 2009, Plaintiffs filed this action in the Circuit Court of Raleigh County, West Virginia. Plaintiffs aver that Defendants' alleged debt collection activities, namely the eighty-nine telephone calls placed to Plaintiffs' residence, were in violation of several provisions of the West Virginia Consumer Credit and Protection Act (WVCCPA), W. Va. Code § 46A-1-101 *et seq*. Specifically, Plaintiffs contend that the repetitiveness and timing of the telephone calls constituted unreasonably oppressive or abusive conduct in violation of W. Va. Code § 46A-2-125(d).[2] Plaintiffs

---

[2] This section states, in relevant part:

> No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> . . . .
>
> (d) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called
>
> (continued...)

2

also maintain that Defendants employed unfair or unconscionable means to collect the debts by continuing to call Plaintiffs' residence after being made aware that Plaintiffs were represented by an attorney in violation of W. Va. Code § 46A-2-128(e) (hereinafter referred to as the Representation Provision).[3]

Count I of Plaintiffs' complaint asserts a cause of action under the WVCCPA. The eighty-nine telephone calls also serve as the basis for Plaintiffs' common law claims of negligence, intentional infliction of emotional distress, and invasion of privacy, which are raised respectively in Counts II, III, and IV of the complaint. Plaintiffs seek to avail themselves of the various remedies provided for in the WVCCPA, including actual damages, W. Va. Code § 46A-1-101(1), statutory damages in the maximum amount authorized by WVCCPA, § 46A-5-106, attorneys' fees, expenses, and costs, § 46A-5-104, and cancellation of their debt to Defendants, § 46A-5-105. Plaintiffs also seek general and punitive damages on their common law claims.

Defendants removed the matter to this Court on February 20, 2009, pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). Defendants filed the pending motion to dismiss Plaintiffs' WVCCPA

---

[2](...continued)
    number.

[3] This section states, in relevant part:

> No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>     . . . .
>     (e) Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

3

claims on March 30, 2009. Defendants highlight two purported constitutional infirmities in the provisions of the WVCCPA relied on by Plaintiffs. First, Defendants argue that the Representation Provision in W. Va. Code § 46A-2-128(e) is "so vague and indefinite that it violates the due process rights of debts collectors." (Docket 8 at 7.) Second, Defendants claim that "the WVCCPA impermissibly restricts [Defendants'] right to engage in commercial speech under the First Amendment to the Constitution of the United States." (*Id*. at 7–8.)

The Attorney General of West Virginia was notified of the challenge to the WVCCPA in accordance with 28 U.S.C. § 2403(b) and Rule 5.1 of the Federal Rules of Civil Procedure. The Attorney General intervened in this matter on June 2, 2009, and filed a memorandum in support of the constitutionality of the WVCCPA on July 1, 2009.

This matter has been fully briefed and is ripe for the Court's consideration.

## II. DISCUSSION

*A. Debt Collection's Status under the First Amendment*

Defendants attack W. Va. Code § 46A-2-128(e) as unconstitutionally vague under the Due Process Clause and the WVCCPA's penalty provisions, W. Va. Code §§ 46A-5-101(1), -105, as unduly burdensome of their First Amendment right to free speech. The success of Defendants' arguments turns in large measure on the degree of constitutional protection afforded to their choice of debt collection practices. Under the respective vagueness and First Amendment analyses, the degree of scrutiny applied by the Court is directly linked to the nature and importance of the rights at stake. *See Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 498–99 (1982); *cf*. *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 758 (1985) ("[N]ot all speech is of equal First Amendment importance."). The debt collection practice at issue in this case—calling a

4

consumer debtor at home to attempt to collect a debt—has elements of speech falling within the purview of the First Amendment. That much is undisputed. However, numerous First Amendment decisions have whittled away at the degree of practical protection this activity enjoys. As will be discussed below, Defendants' debt collection practice of calling debtors at home to discuss debts is entitled to only a modicum of First Amendment protection because it (1) involves commercial speech; (2) pertains to a matter of purely private, rather than public, concern; (3) includes non-communicative conduct; and (4) implicates Plaintiffs' right to privacy in their home.

The debt collection practices at issue here are a form of commercial speech, which is defined as "expression related solely to the economic interests of the speaker and its audience," *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980). Courts have long recognized a "common-sense distinction" between commercial speech and other forms of expression. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56 (1978). Although the "free flow of commercial information" is important, *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 783 (1978), such speech nonetheless occupies a "subordinate position in the scale of First Amendment values," *Ohralik*, 436 U.S. at 456. Accordingly, greater restrictions on commercial speech are tolerated than would be permitted with respect to other forms of speech. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,* 425 U.S. 748, 772 n.24 (1976). Likewise, courts apply a lesser level of scrutiny to restrictions on commercial speech. *W. Va. Ass'n of Club Owners & Fraternal Servs. v. Musgrave*, 553 F.3d 292, 201 (4th Cir. 2009) (citing *Central Hudson*, 447 U.S. at 566).

At stake in this case is Defendants' right to communicate information to Plaintiffs regarding debts they owe to Defendants. This is solely a matter of private concern between the parties. *Cf. Connick v. Myers*, 461 U.S. 138, 147–48 (1983) ("Whether . . . speech addresses a matter of public

concern must be determined by the content, form, and context of a given statement . . . ."). Indeed, public disclosure of the information would be prohibited in most instances. *See* W. Va. Code § 46A-2-126 ("No debt collector shall unreasonably publicize information relating to any alleged indebtedness or consumer."). As a matter of private concern, the speech at issue here is afforded less First Amendment protection than speech touching on public issues. *See Greenmoss Builders*, 472 U.S. at 759; *Snyder v. Phelps*, 533 F. Supp. 2d 567, 576–77 (D. Md. 2008).

Defendants' debt collection activities involve commercial speech and non-communicative conduct, i.e. causing Plaintiffs' home telephone to ring. The WVCCPA, by forcing creditors to direct their debt collection activities through represented consumers' attorneys, is clearly targeting the non-communicative conduct aspect of this particular debt collection practice. Where, as here, "'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). More specifically, the WVCCPA designates the type of telephone calls allegedly at issue here as abusive or harassing conduct, W. Va. Code § 46-2-125, and as an unconscionable means to collect a debt, § 46A-2-128. It is well-established that wrongful conduct of the kind targeted by the WVCCPA may be restricted without violating the First Amendment even though the conduct involves communicative elements. *See Tantilla v. In re Stonegate Sec. Servs., Ltd. (In re Stonegate Sec. Servs., Ltd.)*, 56 B.R. 1014, 1018 (E.D. Ill. 1986) (collecting cases).

It also must be recognized that Defendants' First Amendment rights are not the only rights at play here. Plaintiffs enjoy the "right to avoid unwelcome speech . . . in the privacy of [their] home." *Hill v. Colorado*, 530 U.S. 703, 717 (2000). Defendants' debt collection activities interject

commercial speech directly into Plaintiffs' home against their wishes. Defendants' right to engage in this manner of speech is in direct conflict with Plaintiffs' right to privacy in their home. Where these two rights are in the balance, it is the right to privacy that generally carries more weight. *See, e.g.*, *Rowan v. United States Post Office Dep't*, 397 U.S. 728 (1970) (upholding a law prohibiting advertisers from sending mail to persons who have requested to be removed from mailing lists); *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331 (4th Cir. 2005) (upholding restrictions on telemarketing calls by charitable organizations); *Mainstream Mktg. Servs. v. FTC*, 358 F.3d 1228 (10th Cir. 2004) (rejecting challenge to national do-not-call registry). With the diminished First Amendment status of Defendants' debt collection practices in mind, the Court turns to the merits of their constitutional challenges.

    *B. Vagueness and Overbreadth of W. Va. Code § 46A-2-128(e)*

Generally, a statute may be found unconstitutionally vague for either of two reasons: (1) "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"; or (2) "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. Where the statute potentially restricts First Amendment rights, vagueness may also be found if the boundaries of prohibited conduct are so uncertain that a person is likely to refrain from legitimate exercises his First Amendment rights for fear of running afoul of the law. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). There is no indication that section § 46A-2-128(e) lends itself to arbitrary or discriminatory enforcement. *Cf. Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) (striking down vagrancy laws on vagueness grounds). Thus, the statute will be evaluated only with respect to the first and third standards—lack of fair notice of prohibited conduct and the attendant potential to chill protected speech.

Defendants advance an additional argument contending that the statute is vague because its imprecise wording would subject debt collectors to liability for legitimate activities not within the intended scope of the statute. This argument is more properly construed as a facial overbreadth attack on the statute. It will be addressed as well.

It is necessary at the outset to clarify precisely what type of challenge Defendants are presenting to the statute. A statute can be challenged as vague on its face or as applied to a particular party. These challenges are mutually exclusive. *Schwartmiller v. Garnder*, 752 F.2d 1341, 1346 (9th Cir. 1984). Defendants do not designate their challenge as facial or as applied, but the nature of their challenge is easily inferred from their arguments. Defendants assail section 46A-2-128(e) for its impact on debt collectors as a whole.[4] Furthermore, Defendants make no attempt draw a connection between their actions in this case and the purportedly vague aspects of the statute. Thus, it is evident that Defendants are mounting a facial challenge to the statute.

A statute may be attacked as unconstitutionally vague on its face only in limited circumstances. Courts are not "roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973). A party who cannot complain that its own conduct was ensnared by an impermissibly vague statute generally is prohibited from arguing that the statute may injure others who are not before the court. *See L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38 (1999) ("The traditional rule is that 'a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the

---

[4] For instance, Defendants claim that "the Representation Provision is so vague and indefinite that it violates the due process rights of *debt collectors*." (Docket 8 at 7 (emphasis added).)

Court'."); *Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). The Supreme Court has carved out a narrow exception to this general rule when First Amendment freedoms are at issue: A defendant may challenge a statute as facially vague and overbroad if it has the potential to inhibit First Amendment freedoms. *See L.A. Police Dep't*, 528 U.S. at 38; *Grayned*, 408 U.S. at 109.

When a statute is challenged as vague and overbroad, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates*, 455 U.S. at 495. "If it does not, then the overbreadth challenge must fail." *Id*. The reviewing court must then proceed to the vagueness analysis. Although it has been said that the "facial vagueness analysis becomes the functional equivalent of facial overbreadth analysis," *Schwartzmiller*, 752 F.2d at 1347, there is a distinction between the two, albeit a fine one. *Cf. Hoffman Estates*, 455 U.S. at 494 n.6 (noting that "the vagueness of a law affects overbreadth analysis"). Where, as here, the challenged statute implicates First Amendment rights, the facial vagueness analysis requires the Court to determine whether the boundaries of prohibited conduct are so uncertain that a person is likely to refrain from legitimate exercises of his First Amendment rights for fear of running afoul of the law. *See Grayned*, 408 U.S. at 109.

Defendants' challenge does not fit neatly within the First Amendment exception, however. As was discussed above, the speech at issue in this case is a form of commercial speech entitled to a lesser degree of First Amendment protection than most other forms of speech. One of the consequences of commercial speech's diminished status under the First Amendment is that statutes restricting commercial speech may not be challenged as overbroad. *Waters v. Churchill*, 511 U.S. 661, 670 (1994) (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380–81 (1977)). Another

consequence of commercial speech's status is that Defendants' facial vagueness argument is greatly circumscribed. Defendants may not argue that the statute is overbroad—i.e., that it restricts more commercial speech than is necessary to effectuate the statute's purpose. It necessarily follows that Defendants cannot prevail on a vagueness argument by demonstrating that the statute will chill otherwise permissible exercises of commercial speech. Thus, the statute will be found impermissibly vague only if it chills the exercise of protected non-commercial speech.

>    *(1) Overbreadth*

>    Defendants proffer a hypothetical to illustrate the vagueness of section 46A-2-128(e).

>    Assume that Consumer has two claims, a claim for unlawful debt collection under the WVCCPA and an entirely separate personal injury claim. Consumer hires Attorney to prosecute the personal injury claim, but not the debt collection claim. Meanwhile, Debt Collector communicates with Consumer in an attempt to collect Consumer's debt. Under the vague Representation Provision of the WVCCPA, Debt Collector would be liable for a statutory violation despite the fact that no attorney-client relationship was intruded upon with regard to the specific debt at issue.

(Docket 8 at 7.) Although the hypothetical is predicated on the purported vagueness of section 46A-2-128(e), its purpose is to demonstrate that the statute's reach may extend to wholly innocent conduct. This hypothetical is, by definition, an argument that the statute is overbroad. *See Grayned*, 408 U.S. at 114 (stating that a statute is overbroad "if in its reach it prohibits constitutionally protected conduct"). Thus, it is not a permissible method to challenge a statute that impacts commercial speech. Furthermore, even if the potential overbreadth of the statute were at issue, abstract and implausible theories about the potential scope of a statute are rarely indicative of overbreadth in a statute's practical application. "[W]hile 'there is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question,' because we are 'condemned to the use of words, we can never expect mathematical certainty from our

language.'" *Hill*, 530 U.S. at 733 (quoting *Am. Comm'ns Assn. v. Douds*, 339 U.S. 382, 412 (1950) and *Grayned*, 408 U.S. at 110); *see also Green v. City of Raleigh*, 523 F.3d 293, 306 (4th Cir. 2008). Accordingly, Defendants' challenge to the WVCCPA must be rejected to the extent that it presents an overbreadth challenge.

### *(2) Facial Vagueness*

A statute fails to give fair notice of prohibited conduct, and is therefore vague, if it does not give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. And in the context of a facial challenge to a statute implicating First Amendment rights, the statute will be found unconstitutional if the vagueness of the prohibition on conduct will cause people to "'steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'" *Id*. at 109 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)). In this case, the scope of prohibited conduct must be so ill-defined that debt collectors will refrain from engaging in protected non-commercial speech. With these principles in mind, the Court turns to the wording of section 46A-2-128(e).

The challenged provision prohibits "[a]ny communication with a consumer whenever *it appears* that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained." W. Va. Code § 46A-2-128(e) (emphasis added). Defendants take issue with the phrase, "it appears."[5] Defendants contrast section 46A-2-128(e) with a similar provision in the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692p. 15 U.S.C. § 1692c(a)(2) prohibits unsolicited communication with a debtor "if the debt collector

---

[5] West Virginia is not alone in barring direct communication with a debtor whenever "it appears" that the debtor is represented by counsel. *Compare* W. Va. Code § 46A-2-128(e), *with* D.C. Code § 28-3814(g)(5), *and* Haw. Rev. Stat. § 443B-19.

11

knows the consumer is represented by an attorney." Whereas the FDCPA contains a scienter requirement—i.e. *knowing* that the debtor is represented by an attorney—its WVCCPA counterpart applies to situations in which "it appears" that the debtor is represented. Defendants assert that the lack of an express scienter requirement makes the statute impermissibly vague because it does not "require[] that a debt collector have *actual knowledge* of representation before liability can attach." (Docket 8 at 6 (emphasis in original).) Contrary to Defendants' assertion, the lack of an express scienter requirement, without more, does not signify that section 46A-2-128(e) is impermissibly vague.[6] Vagueness is judged by other standards.

The Court looks to the statute as a whole, not at disembodied fragments, to assess whether its commands are impermissibly vague. *See Grayned*, 408 U.S. at 110. Section 46A-2-128 is not impermissibly vague when taken as a whole. Upon reading section 46A-2-128 in its entirety, a person of ordinary intelligence would be able to conform his actions to the requirements of the Representation Provision. The statute first provides a general description of proscribed conduct: "No

---

[6] The WVCCPA's civil, but not criminal, liability provisions are at issue in this case, which lessens the need for a clearly expressed scienter requirement. Were Defendants facing criminal sanctions for the actions alleged in the complaint, the Court would demand a higher level of clarity and specificity from the WVCCPA. *See Barrenblatt v. United States*, 360 U.S. 109, 137 (1959) (Black, J., dissenting) ("For obvious reasons, the standard of certainty required in criminal statutes is more exacting than in noncriminal statutes."). A defendant generally may not be subjected to criminal liability for acts done without the requisite knowledge or intent. But with regard to civil liability, "the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant." *Morissette v. United States*, 342 U.S. 246, 270 (1952). Moreover, where a statute lacks an expressed scienter requirement, a knowledge or intent requirement often may be implied from the text of the statute. *See id.* at 263. A provision that is not at issue in this case, section 46A-5-103, provides that certain "willful" violations of the WVCCPA are misdemeanors. The Court expresses no opinion as to whether the challenged portions of the WVCCPA are sufficiently clear to support criminal sanctions.

debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim."[7] W. Va. Code § 46A-2-128. The statute proceeds to list five examples of debt collection practices that the are deemed per se unfair or unconscionable. One of these examples, the Representation Provision, prohibits "[a]ny communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication." *Id.* § 46A-2-128(e).

Under the plain meaning of the statute, the West Virginia Legislature has put debt collectors on notice that they are to direct their collection communications to a debtor's attorney when certain circumstances are present. The phrase "it appears" in the Representation Provision refers not to the mental state of the debt collector, but to the facts and circumstances appearing to the debt collector. The word "appears," as used in this context, may be ascribed its ordinary meaning: "to have an outward aspect" or "to become evident or manifest." *Merriam-Webster's Collegiate Dictionary* 56 (10th ed.1993). Thus, for liability to attach, there must be evidence that the debt collector was aware of some fact, statement, or act that would suggest to a reasonable person that the debtor is

---

[7] The term "any claim" has been interpreted by the Supreme Court of Appeals of West Virginia to as only applying to outstanding debts on "consumer credit sales." *Thomas v. Firestone Tire & Rubber Co.*, 266 S.E.2d 905, 907, 909 (W. Va. 1980) (citing W. Va. Code § 46A-1-103(3)). A consumer credit sale is one in which "[c]redit is granted either by a seller who regularly engages as a seller in credit transactions of the same kind or pursuant to a seller credit card." W. Va. Code § 46A-1-102(13). Thus, it is clear that the Representation Provision governs the conduct of a relatively experienced class of creditors and debt collectors who should arguably be held to a higher standard of legal sophistication with respect to debt collection laws than the "person of ordinary intelligence."

13

represented by an attorney.[8] Where it is apparent that the debtor is represented by an attorney, the statute places the burden on the debt collector to communicate, or at least attempt to communicate, through the attorney.

Because section 46A-2-128 is a civil statute burdening commercial speech, the "it appears" standard likely is sufficient to pass muster under the facial vagueness test. The Court need not stop there, however, because the remainder of the Representation Provision provides additional clarity and guidance for debt collectors. Communications with a debtor are prohibited when it appears that the debtor is represented by an attorney *and* "the attorney's name and address are known, or could be easily ascertained." If the name and address of the debtor's attorney are known, a debt collector could not argue in good faith that it did not "appear" that the debtor was represented by counsel. If, however, it appears that the debtor is represented but the name and address of the attorney are not known, the statute plainly commands that debt collectors attempt to ascertain the missing information. This is no heavy burden, as the statute requires that the attorney's name and address be ascertained when it can be done so "easily." A reasonably intelligent person, and certainly a sophisticated debt collector, can decipher the Representation Provision's requirements.

In the unlikely event that the Representation Provision may cause an overly cautious debt collector to refrain from otherwise permissible speech, the speech undoubtedly would be of the

---

[8] The West Virginia Attorney General has proposed a limiting construction on the Representation Provision construing "it appears" as "apparent to a reasonable person." (Docket 28 at 7.) The Court "must, of course, consider any limiting construction that a state court or enforcement agency has proffered," *Hoffman Estates*, 455 U.S. at 494 n.5, but the Court should not give the Attorney General's interpretation of a statute "controlling weight," *Stenberg v. Carhart*, 530 U.S. 914, 940 (2000). It does not appear necessary to impose the limiting construction proffered by the Attorney General here because the same interpretation can be reached by a plain reading of the statute. In either event, the result is the same in this case.

commercial variety. By its terms, section 46A-2-128 applies only to efforts or attempts to collect a debt on a consumer credit sale. "Communication," as it is used in the Representation Provision, therefore refers only to speech intended to cause a debtor to pay a debt. The statute's scope extends only to a specific type of commercial speech. It would not, for example, apply to a debt collector sending a represented debtor literature about candidates for an upcoming election. It would take a very fertile imagination to conceive a scenario in which the Representation Provision would have the effect of chilling protected non-commercial speech. And if such a scenario exists, it would be unavailing. *See Green*, 523 F.3d at 306 ("[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications."). Accordingly, Defendants' facial vagueness challenge to West Virginia Code § 46A-2-128(e) must be rejected.

    *C. First Amendment Challenge to the WVCCPA's Penalty Provisions*

Content-based restrictions on the free exercise of commercial speech are subject to the intermediate scrutiny standard set forth in *Central Hudson*, 447 U.S. at 566–67. The Court must evaluate the challenged restriction under the following sequential four-step analysis:

> Under that test we ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment. If the speech concerns lawful activity and is not misleading, however, we next ask "whether the asserted governmental interest is substantial." If it is, then we "determine whether the regulation directly advances the governmental interest asserted," and, finally, "whether it is not more extensive than is necessary to serve that interest." Each of these latter three inquiries must be answered in the affirmative for the regulation to be found constitutional.

*Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002) (quoting *Central Hudson*, 436 U.S. 566–65) (internal citations omitted). Defendants concede that the first two prongs are satisfied and

assume that the third prong has been met. Thus, the inquiry will focus on the fourth prong—whether the challenged penalty provisions of the WVCCPA, W. Va. Code §§ 46A-5-101(1), -105, are more extensive regulations of speech than are necessary to serve the State's interest. On this point, Defendants assert that the penalty provisions are not narrowly tailored to address the State's interest in protecting consumers from abusive debt collection practices because the magnitude of the potential penalties is grossly disproportionate to the prohibited conduct.

The two penalty provisions at issue create remedies for persons aggrieved by violations of the WVCCPA. The first provision creates a civil cause of action and states the appropriate damages that may be recovered:

> If a creditor has violated the provisions of this chapter applying to . . . any prohibited debt collection practice, . . . the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.

W. Va. Code § 46A-5-101(1). The maximum statutory penalty of $1000 was set in 1974 and indexed to the consumer price index published by the United States Department of Labor. W. Va. Code § 46A-5-106. The current adjusted maximum penalty is approximately $4400 per violation. *See* Bureau of Labor Statistics, Consumer Price Index Inflation Calculator, http://www.bls.gov/data/inflation_calculator.htm (last visited Aug. 25, 2009). The second provision allows for an additional penalty if the violations of the WVCCPA were willful: "[T]he court may cancel the debt when the debt is not secured by a security interest." W. Va. Code § 46A-5-105.

Neither of the challenged penalty provisions contain any substantive restrictions on conduct. Rather, they merely set forth the consequences of violating restrictions contained in other sections of the WVCCPA. The fourth prong of the *Central Hudson* test is concerned with restrictions on

commercial speech that may be more extensive than necessary to accomplish the government's legitimate interest.[9] This raises the question: Can a penalty provision operate as a restriction on commercial speech independent of the provisions containing the substantive restrictions on conduct? The Court finds that it cannot.

Defendants contend that the WVCCPA's *penalty* provisions unconstitutionally restrict the exercise of their First Amendment rights, but they do not make the same argument with respect to any of the *substantive* provisions of the WVCCPA that they are alleged to have violated. In the complaint, Plaintiffs allege that Defendants' debt collection practices were oppressive or abusive conduct in violation of section 46A-2-125(d) and unfair or unconscionable means to collect a debt in violation of section 46A-2-128(e). Each of these statutory provisions contain affirmative limitations on the methods by which a debt collector can attempt to collect a debt. Although these provisions potentially burden commercial speech to some extent, Defendants do not challenge them on First Amendment grounds; the constitutionality of section 46A-2-125(d) is not directly called into question in any of Defendants' arguments, and section 46A-2-128(e), the Representation Provision, is challenged only on Due Process grounds. The sole question presented here is whether the penalties prescribed by the WVCCPA for violations of its substantive provisions operate as overly extensive restrictions on commercial speech.

---

[9] The fourth prong of the *Central Hudson* test refers to "regulation" of speech. 447 U.S. at 567. "Regulation" could be construed broadly as applying a system of laws, including penalties, affecting a particular manner of commercial speech. However, in subsequent cases, the Supreme Court has employed the narrower word, "restriction," in place of "regulation." *See, e.g.*, *Bd. of Trs. v. Fox*, 492 U.S. 469, 476 (1989) ("[G]overnment restrictions upon commercial speech may be no more broad or no more expansive than 'necessary' to serve its substantial interests").

If the penalty provisions of the WVCCPA were to operate as restrictions on commercial speech, they could only do so indirectly. The implication of Defendants' First Amendment challenge is that the WVCCPA would be less burdensome of commercial speech if the prescribed penalties were less severe or otherwise more proportionate to the harms the statute aims to prevent. This suggests that debt collectors would engage in conduct expressly forbidden by the WVCCPA but for the severity of the penalties. It is true that the penalty provisions may have a deterrent effect on debt collectors who might otherwise take a cavalier approach to the prohibitions in the WVCCPA. However, this demonstrates only that the function of the penalties is to compel debt collectors to take heed of the substantive provisions of the WVCCPA wherein particular activities are restricted. The conduct proscribed—in this case, the restrictions on debt collection practices contained in W. Va. Code §§ 46A-2-125(d), -128(e)—is the same regardless of what penalties are assigned to persons engaging in that conduct.

The principle underlying the *Central Hudson* test, and which is drawn directly from the text of the First Amendment, is that speech should be free from unwarranted governmental restrictions. *Cf. Central Hudson*, 447 U.S. at 567 ("[T]he suppression of [commercial speech] reduces the information available for consumer decisions and thereby defeats the purpose of the First Amendment."). It is axiomatic that a legal provision that does not restrict conduct in any manner is unlikely to restrict the particular type of conduct protected by the First Amendment—speech. Therefore, it is improbable that such a provision could fail the fourth prong of the *Central Hudson* test. In this case, Defendants have not demonstrated that the WVCCPA's penalty provisions, W. Va. Code §§ 46A-5-101(1), -105, restrict commercial speech in any constitutionally significant respect. Accordingly, Defendants' First Amendment challenge to the WVCCPA's penalty provisions fails.

*III. CONCLUSION*

For the reasons stated above, Defendants Fingerhut Direct Marketing, Inc. and CIT Bank's Motion to Dismiss Count I of the Complaint [Docket 7] is **DENIED**. Defendants' Motion to Accept Filing of Reply Brief [Docket 13] is **GRANTED**.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The Court further **DIRECTS** the Clerk to publish this opinion on the Court's website at http://www.wvsd.uscourts.gov.

ENTER: August 26, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE