IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CARTER M. STOVER and
BRENDA L. STOVER,

        Plaintiffs,

v.                                          CIVIL ACTION NO. 5:09-cv-00152

FINGERHUT DIRECT MARKETING, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

      The Court has reviewed Defendant Fingerhut Direct Marketing, Inc.,'s Motion In Limine Concerning Unanswered Telephone Calls and the Statutory Penalty [Docket 52]; its Motion In Limine to Preclude Evidence and Argument That It Violated West Virginia Code § 46A-2-127(c) [Docket 53]; its Motion In Limine to Preclude Argument That It May Be Held Liable for More Than One Violation of West Virginia Code § 46A-2-125(d) [Docket 56]; and its Motion In Limine to Preclude Argument Concerning Certain Inadvertent Conversations [Docket 61]. For reasons stated herein, Defendant's Motion In Limine Concerning Unanswered Telephone Calls and the Statutory Penalty is **DENIED**; its Motion In Limine to Preclude Evidence and Argument That It Violated West Virginia Code § 46A-2-127(c) is **GRANTED**; its Motion In Limine to Preclude Argument That It May Be Held Liable for More Than One Violation of West Virginia Code § 46A-2-125(d) is **DENIED**; and its Motion In Limine to Preclude Argument Concerning Certain Inadvertent

Conversations is **GRANTED** in part, and **DENIED** in part.

## I. BACKGROUND

This civil action was removed to this Court on February 20, 2009, under 28 U.S.C. §§ 1332(a) and 1441(a). Judge Johnston summarized Plaintiff's Complaint in an August 26, 2009, Memorandum Opinion and Order in this case:

> Plaintiffs, both residents of Raleigh County, West Virginia, purchased consumer goods from Fingerhut with the aid of financing from [former Defendant] CIT. Plaintiffs eventually fell into arrears on their indebtedness to Defendants, at which time Defendants began efforts to collect the outstanding debts by placing telephone calls and sending mail to Plaintiffs. On an unspecified date in August of 2008, Plaintiffs retained counsel to represent them with respect to the debts owed to Defendants. Shortly thereafter, a representative of Defendants placed a telephone call to Plaintiffs' residence. During that call, Plaintiffs advised the representative that they had hired an attorney and provided the representative with their attorney's name and telephone number. Despite being aware that Plaintiffs were represented by an attorney, Defendants placed eighty-nine telephone calls to Plaintiffs' residence between October 3, 2008, and January 21, 2009.
>
> On January 22, 2009, Plaintiffs filed this action in the Circuit Court of Raleigh County, West Virginia. Plaintiffs aver that Defendants' alleged debt collection activities, namely the eighty-nine telephone calls placed to Plaintiffs' residence, were in violation of several provisions of the West Virginia Consumer Credit and Protection Act (WVCCPA), W. Va. Code § 46A-1-101 *et seq*. Specifically, Plaintiffs contend that the repetitiveness and timing of the telephone calls constituted unreasonably oppressive or abusive conduct in violation of W. Va. Code § 46A-2-125(d). Plaintiffs also maintain that Defendants employed unfair or unconscionable means to collect the debts by continuing to call Plaintiffs' residence after being made aware that Plaintiffs were represented by an attorney in violation of W. Va. Code § 46A-2-128(e) (hereinafter referred to as the Representation Provision) . . . . Plaintiffs seek to avail themselves of the various remedies provided for in the WVCCPA, including actual damages, W. Va. Code § 46A-1-101(1), statutory damages in the maximum amount authorized by WVCCPA, § 46A-5-106, attorneys' fees, expenses, and costs, § 46A-5-104, and cancellation of their debt to Defendants, § 46A-5-105. Plaintiffs also seek general and punitive damages on their common law claims.

*Stover v. Fingerhut Direct Marketing, Inc.*, --- F. Supp.2d ----, 2009 WL 2606555, at *1, 2009 U.S. Dist. LEXIS 76184, at *3-5 (S.D. W. Va. 2009) (Docket 33 at 2). In addition to the statutory violations mentioned above, Plaintiffs also seek recovery under West Virginia Code § 46A-2-127(c).

## II. APPLICABLE LAW

The West Virginia Consumer Credit and Protection Act provides, in part, that:

> No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section-
> . . . .
> (e) Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

West Virginia Code § 46A-2-128(e) (the "Representation Provision"). Additionally, West Virginia Code § 46A-2-125(d) (the "Abuse Provision") also provides that "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number" is unreasonably oppressive and is a violation of the WVCCPA. Finally, West Virginia Code § 46A-2-127(c) states that a failure of a debt collector "to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money" is "fraudulent, deceptive or misleading," and violates the WVCCPA.

Regarding the civil damages that a plaintiff filing suit under the WVCCPA may be able to recover, West Virginia Code § 46A-5-101(1) provides that "[i]f a creditor has violated the provisions of this chapter applying to . . . any prohibited debt collection practice . . . the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court."

The Supreme Court of Appeals of West Virginia has indicted that the WVCCPA is to be construed broadly:

> The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. As suggested by the court in *State v. Custom Pools*, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose." Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va. 1995) (internal citations omitted).

### III. DISCUSSION

*A. Defendant's Motion In Limine Concerning Unanswered Telephone Calls and the Statutory Penalty*

    *1. Defendant's Unanswered Phone Calls to Plaintiffs*

Defendant argues that its unanswered, auto-dialed phone calls to the residence of Plaintiffs do not constitute "communications with" Plaintiffs under this statute. Defendant makes two arguments in support of this proposition, neither of which have been addressed by the Supreme Court of Appeals of West Virginia.

First, due to the absence of a definition of "communication with" in the WVCCPA, Defendant cites to what it argues is the "common, ordinary, and accepted meaning" of this term:

> "With" is a function word that indicates "combination" or "accompaniment." *See* Merriam-Webster's Collegiate Dictionary, 10th ed., p. 1359. "Communication," of course, means "an act of transmitting information." *Id.* at p. 233. The American Heritage College Dictionary similarly defines "communication" as "[t]he exchange of thoughts, messages, or information." *See* American Heritage College Dictionary, 3rd ed., p. 282.
> In light of the foregoing definitions, the communication element of the Representation Provision is satisfied only where a Fingerhut collections agent "exchanged thoughts, messages, or information" to, or in the company of, one or both of the plaintiffs. *Id.* This, of course, did not occur where plaintiffs did not answer Fingerhut's computerized, auto-dialed calls. In those circumstances, no "thoughts, messages, or information" were exchanged "with" plaintiffs.

(Docket 52 at 5). Based on this definition, Defendant argues that "communication with" a consumer

does not include unanswered telephone calls.

Additionally, Defendant also argues that an *in pari materia* reading of the WVCCPA also supports its proposition that the Representation Provision only applies to answered telephone calls and an exchange of information. It compares the Representation Provision with the Abuse Provision. The latter provision imposes liability for "causing a telephone to ring," while the Representation Provision punishes a debt collector's illegal "communications with" a consumer. Defendant thus concludes that "[u]nanswered calls, by their unrequited nature, are uncommunicative." *Id.*

Plaintiffs disagree with the arguments of Defendant. They argue that they do not need to answer the phone "to subject themselves to the coercive effect of a creditor causing the phone to ring incessantly," and that even when they did not answer the phone, they knew that Defendant was calling due to the assistance of caller identification technology ("caller I.D."). (Docket 57 at 14). While Plaintiffs do not disagree with Defendant's definition of "communicate with," they argue that "one need not talk or have conversation with another in order to communicate." *Id.* at 17. They argue that caller I.D. can "directly [convey] very specific information to the consumer: [1)] that a debt collector is trying to reach you; 2) that the debt collector wants to talk to you about your debt[;] and 3) [that] the debt collector wants money. The consumer does not have to engage in an actual conversation with the debt collector to obtain this information." *Id.* at 20. Plaintiffs argue that West Virginia Code § 46A-2-128(e) should be used in its broadest sense and interpreted to give effect to the remedial purpose of the statute, and that replacing the word "communication" with "conversation" changes the meaning and legislative intent of § 46A-2-128(e). *Id.*

Plaintiffs also compare the WVCCPA to the Federal Fair Debt Collection Practice Act

("FFDCPA"), 15 U.S.C. § 1692 *et seq.*[1] The latter statute defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Federal courts have held that messages left on answering machines constitute "communication" under the FFDCPA. *Belin v. Litton Loan Servicing*, *LP*, 2006 WL 1992410, at *4-5, 2006 U.S. Dist. LEXIS 47953, at *13-14 (M.D. Fl. July 14, 2006) (holding that messages left on plaintiff's answering machine constitute communications under the FFDCPA, as they "conveyed information about a debt indirectly"). *See also Foti v. NCO Financial Systems, Inc.*, 424 F. Supp.2d 643, 655-59 (S.D.N.Y. 2006); and *Hosseinzadeh v. M.R.S. Assoc., Inc.*, 387 F. Supp.2d 1104, 1116 (C.D. Cal. 2005). Plaintiffs thus argue that unanswered calls can constitute communication under the WVCCPA just as voice mail messages can constitute communication under the FFDCPA.

While Defendant makes strong arguments, the Court disagrees. First, Defendant's definition of "communication with" is too narrow, and fails to recognize that courts should "construe the [WVCCPA] liberally." *Scott Runyan Pontiac-Buick, Inc.,* 461 S.E.2d at 523. For the purposes of the WVCCPA, a more appropriate definition of "communication" is from Black's Law Dictionary, which defines the word as "[t]he expression or exchange of information by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception." Black's Law Dictionary 316 (9th ed. 2009). Unanswered telephone calls may constitute communication, as such calls can be conduct that expresses information to the intended recipient. Just as the *Belin* court held that answering machine messages can indirectly convey information about a debt, so can unanswered telephone calls indirectly convey such information. Unanswered telephone calls may communicate to the recipient that someone is trying to speak with you, and, in the context of telephone calls from

---

[1] The latter statute differs from the Representation Provision in that it forbids communication only when a debt collector "know[s]" that a consumer is represented by an attorney. 15 U.S.C. § 1692c(a)(2).

debt collectors, may communicate to a consumer that her lender wants to speak with her, and wants her to pay her debts. In cases where a consumer receives a high volume of communications from a debt collector, such calls may signal other intentions from a debt collector.[2] *See* W. Va. Code § 46A-2-125(d) (forbidding the "[c]ausing [of] a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number").

Moreover, Defendant's *in pari materia* reading of West Virginia Code § 46A-2-128(e) and 125(d) is incorrect. Section 46A-2-128(e) applies to a broader sphere of conduct than § 46A-2-125(d). The latter provision is targeted at behavior that is intended to "annoy, abuse, oppress or threaten," while the former has no such *mens rea* requirement; the latter only forbids communication with a consumer whenever it appears that the consumer is represented by an attorney. As the two provisions are targeted at different behavior, the fact that West Virginia Code § 46A-2-128(e) does not explicitly impose liability for causing a telephone to ring does not mean that unanswered telephone calls do not constitute "communication with" a consumer.

Accordingly, the undersigned finds that, under West Virginia Code § 46A-2-128(e), "communication with" a consumer may include unanswered telephone calls.

*2. Statutory Penalty under West Virginia Code § 46A-5-101(1)*

---

[2] Defendant and Plaintiffs disagree as to the number of telephone calls made by Defendant to Plaintiffs. In discussing this dispute, counsel for Plaintiffs made a disparaging remark about Defendant's counsel in a footnote of his response to Defendant's motion. Such a remark is inappropriate for an officer of the court. Counsel for Plaintiffs should, perhaps, re-read Rule 3.5 of the West Virginia Rules of Professional Conduct (stating, in commentary to the Rule, that "[t]he advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants . . . . An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics).

Defendant also argues that even if Plaintiffs are able to prove more than one statutory debt collection violation at trial, they are only entitled to receive a single civil penalty under West Virginia Code § 46A-5-101(1). Despite the fact that said provision went into effect in 1974, this question is one of first impression, having never been decided by the Supreme Court of Appeals of West Virginia. Defendant makes several arguments in support of this contention.

First, Defendant argues a single civil penalty follows the plain language of the statute. As stated above, § 46A-5-101(1) provides that

> [i]f a creditor has violated the provisions of this chapter applying to . . . any prohibited debt collection practice . . . the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court . . . .

Defendant argues that multiple civil penalties would "rewrite this statute . . . strik[ing] out the final period and append the words 'for each violation of this chapter,'" concluding that "the statutory text provides for 'a penalty,' singular." (Docket 52 at 6).

Defendant also argues that an *in pari materia* reading of the WVCCPA penalty provisions supports this proposition, as it reveals that "the absence of 'for each violation' language in § 46A-5-101(1) is not an accident, but a conscious legislative decision." Defendant argues that:

> [i]n some penalty provisions,[3] the Legislature has expressly authorized the imposition of penalties "for each violation of this chapter," or in similar circumstances. By contrast, several other penalty provisions of the [WVCCPA] are worded like § 46A-5-101(l); that is, they do not expressly authorize a separate penalty for each violation. To read § 46A-5-101(l) as authorizing a civil penalty for each proven violation—despite the lack of authorizing language in this instance—would ignore the Legislature's decision to authorize per-violation penalties in some instances, but not in others.

(Docket 52 at 6-7).

---

[3] Defendant cites to West Virginia Code §§ 46A-7-111(2); 46A-2A-104(b); 46A-6L-104(a)(4); and 46A-6L-104(b)(4).

Defendant next points the Court to analysis done by the Supreme Court of Appeals of West Virginia on a different penalty provision prior version of the WVCCPA, specifically, the prior version of West Virginia Code § 46A-7-111(2). Said prior version of that statute read:

> The attorney general may bring a civil action against a creditor . . . to recover a civil penalty for willfully violating this chapter, and if the court finds that the defendant has engaged in a course of repeated and willful violations of this chapter, it may assess a civil penalty of no more than five thousand dollars.

*W. Va. ex. rel. McGraw v. Imperial Mktg.*, 506 S.E.2d 799, 810 n.15 (W. Va. 1998). In *Imperial Marketing*, the Supreme Court of Appeals overturned a $500,000 civil penalty under § 46A-7-111(2), stating that the statute provides for a civil penalty of no more than $5,000. Following the decision in Imperial Marketing, the West Virginia legislature amended § 46A-7-111(2) to authorize a penalty for "for each violation of this chapter." 1999 West Virginia Acts Ch. 58. Defendant argues that the prior version of § 46A-7-111(2) and § 46A-5-101(l) should be read identically. Without the West Virginia legislature amending § 46A-5-101(l) to authorize a penalty for each violation, Defendant argues, § 46A-5-101(l) only allows a single penalty regardless of the number of violations.

Plaintiffs counter that Defendant's reliance on *Imperial Marketing* is misplaced, and that the two provisions are too different to be read similarly. They point out that the version of § 46A-7-111(2) litigated in that case required multiple willful violations before a single penalty could be imposed, while § 46A-5-101(l) does not require multiple willful violations before the imposition of a civil penalty.

Finally, Defendant argues that statements in two bankruptcy decisions that provide that § 46A-5-101(l) authorizes multiple penalties are dicta and not binding on the Court. In *Sturm v. Providian National Bank*, 242 B.R. 599, 602-3 (S.D. W. Va. 1999) (Haden, C.J.), the issue before the court was the amount in controversy requirement of diversity jurisdiction. In determining the amount in controversy, Chief Judge Haden wrote that "[a]s the statute makes clear, each violation

creates a single cause of action to recover a single penalty." *Id.* at 603. Chief Judge Haden then remanded the case, finding that the total penalty being sought by the plaintiff, $42,900, did not meet the amount in controversy requirement. *Id.* Defendant claims that this is dicta. Defendant argues that there was no direct analysis of § 46A-5-101(l) in *Sturm* because Chief Judge Haden "only had to determine whether the requisite amount was 'in controversy,' which it did by simply observing the contention that the debtor was entitled to a civil penalty for each violation . . . . [the court] simply took the parties at their word that § 46A-5-101(1) provides for multiple penalties." (Docket 52 at 9). Defendant similarly argues that *In re Machnic*, 271 B.R. 789, 794 (Bkr. S.D. W. Va. 2002), is only a case of dicta. In *Machnic*, Bankruptcy Judge Pearson cited *Sturm* in stating that "each act of a debt collector which violates the WVCCPA creates a single cause of action to recover a single penalty." *Id.*

Defendant argues that the lack of analysis of § 46A-5-101(1) in both of these cases means that the Court is free to conduct its own interpretation, and accordingly hold that the term "a penalty" requires that only a single penalty is authorized. In their response to Defendant's motion, Plaintiff argue that *Sturm* and *Machnic* stand for the proposition that § 46A-5-101(1) authorizes multiple penalties, though Plaintiffs do not address Defendant's argument that the relevant portion of those cases are only dicta and do not actually analyze the provision.

Defendant again makes strong arguments. However, the Court holds that § 46A-5-101(1) does indeed allow multiple penalties. First, while Defendant argues that the plain language of the statute precludes more than one penalty, its language plainly allows multiple penalties. Section 46A-5-101(1) provides that "[i]f a creditor has violated the provisions of this chapter applying to . . . any prohibited debt collection practice . . . the consumer has a cause of action to recover actual damages and in addition *a right in an action* to recover from the person violating this chapter a

penalty." (Emphasis added). This provision gives consumers a right to a civil action whenever a violation occurs. Accordingly, if consumers can recover multiple penalties by filing separate actions for each individual violation, a plaintiff can also recover multiple penalties through consolidating his claims in one single action. The statute is not written in a fashion that limits a consumer's recourse for multiple violations of a creditor. Further, other courts in this District have held that multiple penalties are indeed authorized under that provision.[4] *See* Pre-Trial Conference Transcript of Proceedings at 26, *Seymour v. FDIC*, Civil Action No. 2:07-00552 (S.D. W. Va.) (Goodwin, C.J.) (Docket 73).

Defendant's *in pari materia* reading of the WVCCPA is likewise not determinative, as the provisions cited by Defendant apply to contexts and areas of law different from the one at bar. While § 46A-7-111 does apply to debt collectors, as Plaintiffs pointed out in their response to Defendant's arguments on *Imperial Marketing*, that provision applies to consumer suits brought by the Attorney General when there have already been "repeated and willful violations." Section 46A-5-101(1) has no such requirement. It does not require "repeated and willful" violations, willful violations, or repeated violations. The other provisions cited by Defendant are not related to actions brought against debt collectors who unlawfully contact a consumer. Section 46A-2A-104 deals with breaches of computerized personal data, and allows for suits only by the Attorney General, or by the primary regulator of a violating financial institution. Section 46A-6L-104, moreover, concerns identity theft. All of these provisions are not on point with § 46A-5-101(1). They do not deal with civil penalties

---

[4] The Court also observes that, in its Notice of Removal, Defendant used multiple penalties under § 46A-5-101(1) as a basis for the amount in controversy requirement of 28 U.S.C.§§ 1332(a) and 1441(a) diversity jurisdiction. Moreover, unlike other WVCCPA Defendants in this Court, Defendant did not include any qualifying-type language in said Notice of Removal stating that § 46A-5-101(1) *might* provide for multiple penalties. Defendant unambiguously stated that multiple penalties were provided for in the statute.

due to consumers after they have been unlawfully contacted by a debt collector.

The Court agrees with Plaintiffs' reading of § 46A-7-111(2), and finds that *Imperial Marketing* is not an applicable case. As stated earlier, the provision at issue in that case applies to multiple willful violations, not single violations, and deals with suits filed by the Attorney General and not consumers. *Imperial Marketing* can also be distinguished from the case at bar by the subject matter of the former's litigation. That case was brought by the Attorney General under the West Virginia Prizes and Gifts Act, W. Va. Code § 46A-6D-1 *et seq.* It involved a direct marketing scheme that tied prize awards and gifts to product purchases. The underlying behavior litigated in *Imperial Marketing* is not similar or related to the activity covered by § 46A-5-101(1), consumer debt collection practices.

Defendant is correct in arguing that *Sturm* and *Machnic* do not analyze § 46A-5-101(1). However, those cases, while not directly on point, are still persuasive and support the proposition that § 46A-5-101(1) authorizes multiple civil penalties. Moreover, the passages cited to by Defendant are not simply dicta. Chief Judge Haden could have chosen to deny subject matter jurisdiction on the basis that the amount in controversy was only $3,300, the fine that would have been applicable at that time if only single civil penalty were authorized. Further, the *Machnic* court's discussion of § 46A-5-101(1) went beyond dicta. Bankruptcy Judge Pearson actually applied § 46A-5-101(1) and awarded a statutory penalty to the debtor in that case. Moreover, Bankruptcy Judge Pearson based his penalty on the fact that the two violations at bar arose from one act, and not because the debtor was limited to a single penalty despite there being two violations.

Finally, the undersigned finds that there are important public policy reasons for finding that § 46A-5-101(1) allows for multiple civil penalties. This is evidenced by the jurisprudence of the West Virginia Supreme Court of Appeals, which, as noted earlier, has written that the WVCCPA

should be construed liberally to accomplish that statute's purpose of "protecting consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d at 523. The undersigned finds that the legislature did not intend for debt collectors who violate the statute a hundred times to receive the same penalty as those who violate the WVCCPA only once. A single civil penalty would not deter debt collectors from repeatedly contacting consumers who appear to be represented by an attorney. Public policy thus supports multiple civil penalties.

Accordingly, for the reasons stated above, the undersigned finds that West Virginia Code § 46A-5-101(1) allows for multiple civil penalties, and **DENIES** Defendant's motion.

*B. Defendant's Motion In Limine to Preclude Evidence and Argument that It Violated West Virginia Code § 46A-2-127(c)*

In this motion, Defendant argues that Plaintiffs should be precluded from presenting evidence and arguments that Defendant violated West Virginia Code § 46A-2-127(c). That provision provides that a "failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money" is in violation of the law.

Both Plaintiffs stated in their depositions that when they communicated with Fingerhut employees, the Fingerhut employees disclosed that they were working for Fingerhut, and Plaintiff Brenda Stover testified that she understood that a collection agent who disclosed that she worked for "Fingerhut" worked for "Fingerhut Direct Marketing, Inc." Defendant also points the Court to Exhibit One of Plaintiffs' complaint. Said exhibit is written correspondence from Defendant to Plaintiff Carter Stover that clearly states Defendant's true name and full business address. Based on this information, Defendant argues that Plaintiffs should be precluded from presenting evidence and

arguments that Defendant failed to clearly disclose its name and full business address.

Plaintiffs do not dispute these facts, and do not oppose the motion insofar as the question of whether Defendant violated West Virginia Code § 46A-2-127(c) is a question of law for the undersigned and not a question of fact. Plaintiffs state that there are some outstanding questions of law, as the monthly statement sent by Defendant to Plaintiff Brenda Stover does not contain Defendant's true name—Fingerhut Direct Marketing, Inc.—and because Defendant and its trade name may not be properly registered with the State of West Virginia.

Defendant appears to be arguing in this motion that there is no genuine issue as to whether it failed to disclose its name and business address to Plaintiffs, and that it is entitled to judgment as a matter of law. This is not appropriate for a motion in limine. Defendant should have brought this motion under Rule 56 of the Federal Rules of Civil Procedure, and done so prior to the December 10, 2009 deadline for dispositive motions in this case. However, to preserve judicial economy, on this occasion the undersigned will hear Defendant's motion. Plaintiffs' argument that Defendant may have violated West Virginia Code § 46A-2-127(c) through its monthly statement to Plaintiff Brenda Stover and through its failure to fully register with the State of West Virginia is unfounded. Therefore, Defendant's motion is **GRANTED**. In the future, however, counsel for Defendant should bring Rule 56 motions for summary judgment under Rule 56.

*C. Defendant's Motion In Limine to Preclude Argument That It May Be Held Liable for More Than One Violation Of West Virginia Code § 46A-2-125(d)*

Defendant also moves to preclude Plaintiffs from arguing that it may be held liable for more than one violation of the Abuse Provision. As stated earlier, § 46A-2-125(d) provides that "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number" is unreasonably oppressive and abusive, and is a violation

of the WVCCPA.

Plaintiffs allege that Defendant placed numerous telephone calls to their house between October 3, 2008, and January 21, 2009, arguing, *inter alia*, that such calls constitute repeated violations of the Abuse Provision. Defendant argues that it can only be held liable for a single violation because, under the plain language of the Abuse Provision, a violation occurs "only where there is a series or pattern of abusive calls of conversations . . . . The statute thus aggregates the calls for the purposes of setting a threshold for liability. In such circumstances, the repeated or continuous calls or conversations may form the predicate for a violation (singular) of the Abuse Provision." (Docket 56 at 2-3). Plaintiffs disagree with Defendant, arguing that it is up to the trier of fact to determine whether "all of the calls, some of the calls[,] or none of the calls were placed by the Defendant with the intent to annoy, abuse or oppress." (Docket 65 at 1-2)

Defendant is correct that repeated or continuous calls may constitute *a* violation of the Abuse Provision. In a case like this, however, where a large number of phone calls are alleged, it is up to the finder of fact to determine whether all of the alleged telephone calls constitute one violation, or whether individual calls or strings of calls are themselves individual violations, if at all. For example, Plaintiffs have alleged that Defendant telephoned them four times on a New Years Eve. *See* Docket 57 at 14. Assuming *arguendo* that such calls occurred, they may constitute four violations, one discrete violation, part of one, single violation that is inclusive of all telephone calls from Defendant to Plaintiffs, or, instead, they may not violate the Abuse Provision at all. Questions like this are for the finder of fact. Accordingly, the undersigned **DENIES** Defendant's motion.

*D. Defendant's Motion In Limine to Preclude Argument Concerning Certain Inadvertent Conversations*

Finally, Defendant moves to preclude Plaintiffs from arguing that its inadvertent communications with one Plaintiff when it was calling on the account of the other Plaintiff violate

the Representation Provision. Defendant states that, on occasion, some of its collection agents would attempt to speak with Plaintiff Carter Stover, but would instead reach Plaintiff Brenda Stover, and *vice versa*. Defendant refers the undersigned to its motion in limine concerning unanswered telephone calls and the statutory penalty, and also argues that, as Plaintiffs each had separate Fingerhut accounts and were not obliged to pay each other's debts, each Plaintiff does not qualify as a "consumer" under West Virginia Code § 46A-2-122(a)[5] for the purposes of the other Plaintiff's debts. Plaintiffs oppose this motion, arguing that such inadvertent conversations still constitute "communication with" a consumer under the WVCCPA.

As the undersigned has stated above, "communication with" a consumer under the WVCCPA should be construed broadly. Speaking with the spouse of a consumer may constitute "communication with" said consumer, as it can be reasonably foreseen that said spouse would inform said consumer of the telephone call. However, the undersigned also recognizes that this case presents facts where both spouses are consumers. Defendant should not be held liable for violating the WVCCPA as to the spouse that it inadvertently spoke with during instances when it called on the account of the other Plaintiff. Therefore, to the extent that Defendant wishes to preclude such inadvertent conversations as constituting "communication with" either both Plaintiffs or the Plaintiff that Defendant inadvertently spoke with, its motion is **GRANTED**. To the extent that Defendant wishes to preclude such conversations as constituting "communication with" the unavailable intended recipient, its motion is **DENIED**.

### IV. CONCLUSION

For the reasons stated above, the Court **ORDERS** Defendant's Motion In Limine Concerning

---

[5] West Virginia Code § 46A-2-122(a) defines "consumer" as "the natural person . . . obligated . . . to pay any debt."

Unanswered Telephone Calls and the Statutory Penalty [Docket 52] **DENIED**; its Motion *In Limine* to Preclude Evidence and Argument that It Violated West Virginia Code § 46A-2-127(c) [Docket 53] **GRANTED**; its Motion In Limine to Preclude Argument That It May Be Held Liable For More Than One Violation Of West Virginia Code § 46A-2-125(d) [Docket 56] **DENIED**; and its Motion In Limine to Preclude Argument Concerning Certain Inadvertent Conversations [Docket 61] **GRANTED** in part, and **DENIED** in part.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 17, 2010

_____
IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA